# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jennie Emmons, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have served as a Special Agent since 1997. My experience includes federal investigations of complex white collar crime, child sexual exploitation, kidnapping, and human trafficking. In the course of these investigations, I have gained an understanding of current technology, to include computers and online accounts, and have conducted analyses of the data related to such accounts, for the purpose of solving and proving crimes.

2. I have investigated and assisted in the investigation of criminal matters involving the sexual exploitation of children which constituted violations of Title 18, United States Code, Sections 2252 and 2252A, which criminalize the possession, receipt and transmission of child pornography, that is, visual images depicting minors engaged in sexually explicit conduct.

3. The statements contained in this affidavit are based on my personal knowledge as well as on information provided to me by other law enforcement officers. This affidavit is being submitted for the limited purpose of obtaining a search warrant, and thus I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts which I believe are necessary to establish probable cause to believe evidence of violations of Title 18, United States Code, Sections 2252 and 2252A, is present in the items to be searched.

4. I submit this affidavit in support of an application for a warrant to search one LG TracFone cellular telephone (hereinafter referred to as the "cell phone"). The cell phone is described with greater particularity in Attachment A, attached hereto and incorporated herein.

1

## PROBABLE CAUSE

5.     In early March of 2018, I learned the following information from public court filings. Donald " Donny" Therrien, born January 17, 1985, was convicted in 2009 of federal child pornography possession charges. He was sentenced to 72 months for this offense to run consecutively with a 60-month sentence for a firearms offense charged in 2005. While on supervised release, he was violated for behavior that included an incident at the Milton Rite Aid. In April 2016, Therrien was sentenced for three violations of supervised release: 1) use of an electronic device without an approved Internet plan, 2) possession of sexually explicit material (adults and minors), and 3) contact with persons under 18 years of age without permission. He received an additional 24 months in prison and five years of supervised release.

6.     I have reviewed a memorandum titled "Report of Violation Conduct" related to these violations. The report was authored by United States Probation officer Louis A. Stazi on March 14, 2016, and reads, in relevant part, as follows:

> On March 11, 2016 USPO Parish Gibson and I confronted Therrien as he was entering his home. I reminded Therrien of his search condition and asked him if he had his cell phone. Therrien informed me that he left it in his bedroom. I asked Therrien to remove his jacket and I located a LG Trac phone in his right jacket pocket. Therrien then informed me that he thought that he left it in his room. I asked Therrien if this was the phone that he had previously informed me of, and he eventually informed me that it was not and that he found it in a box at his home and later activated it and that it was able to access the internet. Therrien eventually admitted to accessing the internet on this phone as well. Therrien would eventually admit to downloading one adult pornographic movie on his phone from either the youporn or xxxporn websites.
>
> …
>
> Therrien's LG Trac phone was seized and brought back to this office for a further inspection. A preliminary search of the video downloads reveals multiple pornographic videos as well as two (2)

videos depicting medical evaluations of an infant's genitalia. There are also multiple images of minor females in provocative poses as well as those depicting young females in various states of undress.

7. I am aware that on February 22, 2019, the United States Attorney's Office for the District of Vermont filed a Motion captioned "Request for Authorization for the Probation Office to Disclose Materials Within Their Files." In short, this Motion requested authorization for the Probation Office to turn over the LG TracFone to the United States in anticipation of the instant application for search warrant. The Motion was granted by United States District Judge Christina Reiss on March 5, 2019. I intend to take custody of the LG TracFone, pursuant to the Court's order, upon the issuance of the instant search warrant.

## TRAINING AND EXPERIENCE

8. Based upon my training and experience, I know that computers and computer technology have revolutionized the way that individuals interested in child pornography interact with each other. In the past, child pornography was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images, and to distribute these images on any scale required significant resources and significant risks. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public and/or law enforcement. The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

9. The development of computers has radically changed the way that child pornographers obtain, distribute and store their contraband. Computers basically serve five functions in connection with child pornography: access, production, communication,

distribution, and storage.

10. Child pornographers can now convert paper photographs taken with a traditional camera (using ordinary film) into a computer readable format with a device known as a scanner. Moreover, with the advent, proliferation and widespread use of digital cameras, the images can now be transferred directly from a digital camera onto a computer using a connection known as a USB cable or other device. Digital cameras have the capacity to store images and videos indefinitely, and memory storage cards used in these cameras are capable of holding hundreds of images and videos. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

11. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media, that is, the hard disk drive used in home computers has grown tremendously within the last several years. These hard disk drives can store hundreds of thousands of images at very high resolution.

12. The World Wide Web of the Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

13. Collectors and distributors of child pornography frequently use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo!, Hotmail, and Google, among others. The online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child

4

pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

14.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving particular website locations in, for example, "bookmarked" files. Digital information, images and videos can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). Often, a computer will automatically save transcripts or logs of electronic communications between its user and other users which have occurred over the Internet. These logs are commonly referred to as "chat logs." Some programs allow computer users to trade images while simultaneously engaging in electronic communications with each other. This is often referred to as "chatting," or "instant messaging." Based on my training and experience, I know that these electronic "chat logs" often have great evidentiary value in child pornography investigations, because they record communications in transcript form, show the date and time of such communications, and also may show the dates and times when images of child pornography were traded over the Internet. In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained on a computer for long periods of time until overwritten by other data.

15.     Based on my training and experience, I know that many cellular telephones

5

essentially function as computers, and can be used to transmit both written messages ("texting") as well as images. Cellular telephones have the capacity to store voice mail messages, names, telephone numbers, addresses, sent and received text messages, and images on their internal memory. Many cellular telephones have the capability to capture digital photographic images and videos, store them in internal memory, and transmit them to one or more different cellular telephones. Some cellular telephones contain small removable memory cards that can be used to store data and images. I also know that individuals sometimes use cellular telephones to produce, send and receive pornographic images of themselves and others, a phenomenon referred to as "sexting." Based on my training and experience, I know that "sexting" that involves images of minors (children under the age of 18 years) constitutes, among other things, transmission, receipt and possession of child pornography.

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Furthermore, information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the cell phone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19.     *Manner of execution.*  Because the execution of this warrant does not involve the physical intrusion onto a premises, I submit that there is reasonable cause for the Court to authorize execution of the warrant at any time of day or night.

## CONCLUSION

20.     Based on the forgoing, I submit there is probable cause to search the contents of the cell phone, specifically described in Attachment A, for the evidence delineated in Attachment B of the Application.

Dated at Burlington, in the District of Vermont, this 7th day of May 2019.

_____
Jennie Emmons
Special Agent, FBI

Sworn to and subscribed before me this 7th day of May 2019.

_____
Honorable John M. Conroy
United States Magistrate Judge

8